# UNITED STATES DISTRICT COURT

NORTHERN  DISTRICT OF  ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

PAUL NOEL

CRIMINAL COMPLAINT

**08CR 0134**

CASE NUMBER:

MAGISTRATE JUDGE VALDEZ

*FILED KC FEB 15 2008 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT*

I, Dennis Ivanich, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __February 14, 2008__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant Paul Noel did,

travel in interstate commerce, from Philadelphia, Pennsylvania to Chicago, Illinois, with intent to distribute proceeds of, and otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of, an unlawful activity, namely narcotics or controlled substance distribution;

in violation of Title __18__ United States Code, Section(s) __1952(a)(1), (3)__

I further state that I am a(n) __Task Force Officer with the Drug Enforcement Administration__ and that this
Official Title

complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:  X  Yes      ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__February 15, 2008__     at   __Chicago, Illinois__
Date                                           City and State

__Maria Valdez, U.S. Magistrate Judge__     _____
Name & Title of Judicial Officer              Signature of Judicial Officer

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

## AFFIDAVIT

I, Dennis Ivanich, being duly sworn under oath, deposes and states the following:

1. I am employed by the Lockport Police Department and have so employed for twelve years. Currently, I am assigned as a Task Force Officer to the Drug Enforcement Administration ("DEA") and have been so assigned for a total of two and half years, with my most recent assignment beginning four months ago. Specifically, I am assigned to Amtrak/Union Station, where my duties include the investigation of offenses involving the transportation of currency and narcotics distributions.

2. I make this affidavit from personal knowledge, participation in the investigation, and based on information I have received from other sources. The affidavit is submitted in support of a criminal complaint alleging that defendant PAUL NOEL traveled in interstate commerce, namely from Philadelphia, Pennsylvania to Chicago, Illinois, with intent to distribute the proceeds of, and otherwise promote, manage, establish, carry on, and facilitate promotion, management, establishment and carrying on of, an unlawful activity, namely narcotics or controlled substance distribution, all in violation of Title 18, United States Code, Sections 1952(a)(1), (3). The information below is provided for the limited purpose of establishing probable cause in support of the criminal complaint for NOEL. Because the information set forth below is for the limited purpose of establishing probable cause, it does not contain all of the facts of which I am aware related to this investigation.

3. On or about February 14, 2008, at approximately 1:30 p.m., I learned that a passenger, traveling by the name PAUL NOEL, had purchased a one-way, first class train ticket from

Chicago, Illinois to Emeryville, California, scheduled for departure from Union Station at 2:00 p.m. The ticket had been purchased for approximately $686 with cash about one hour prior to the departure. The train assignment given to NOEL was Train 5, Car 532, Room 13.

4. In my experience as a Task Force Officer, the purchasing of a one-way, first class train ticket in cash, one hour prior to the departure time are factors suggesting possible narcotics trafficking and other illegal activity.

5. Based on these factors, I, along with other DEA agents, proceeded to board Car 532. While on Car 532, I observed a white male, later identified as NOEL, board the train, carrying a suitcase, a backpack and two smaller cooler bags with shoulder straps. I observed that NOEL was struggling with his luggage and overheard him comment to the car attendant that his bags were heavy. I then observed NOEL enter Room 13, which alerted DEA of his possible identity.

6. I, along with other DEA agents, approached NOEL. The DEA agents stood outside of Room 13, while NOEL was inside the compartment with the door open. The DEA agents identified themselves to NOEL. The DEA agents told NOEL that he was not under arrest and that he was not obligated to speak to the agents. NOEL agreed to speak with the DEA agents. Below in substance is the conversation with NOEL.

7. NOEL remained inside Room 13, talking to the DEA agents who were outside Room 13. Upon request, NOEL provided his identification, producing a California driver's license bearing the name "Paul Noel," and a train ticket. NOEL's ticket was for travel from Chicago, Illinois to Emeryville, California.

8. I asked NOEL whether he was given packages, the contents of which were unknown to him, and NOEL responded negatively. NOEL then confirmed that the backpack and the two smaller cooler bags in Room 13 belonged to him, and added that he also had one suitcase in the

luggage rack in the train's Car 532's common area. The luggage rack is along the wall between train car entrance and the individual rooms. NOEL stated that he had packed the luggage himself and knew its contents. NOEL further stated he was just carrying clothes. NOEL was specifically asked if he was carrying any weapons, narcotics, or large amounts of United States currency, to which NOEL responded negatively to all three, but NOEL noted that he had a few thousand dollars on him.

9. NOEL then gave consent for agents to search his luggage. At that point, NOEL walked out of Room 13 to identify as his suitcase a black Eddie Bauer roller bag in the luggage rack of Car 532's common area. NOEL returned to Room 13. DEA agents searched the identified black bag. When agents opened the black bag, they located a second tan bag inside, which contained a large amount of United States currency, some of which was in envelopes.

10. I learned about the large amount of United States currency, and talked to NOEL from outside of Room 13, while NOEL remained inside. I asked NOEL how much currency was in the suitcase. NOEL responded that there was about $100,000 and that it was "technically his." NOEL further stated that the money was to be used for a real estate purchase in Mexico. NOEL stated that he did not have any proof or receipts that the money belonged to him.

11. At that point, DEA agents advised NOEL that the money found in the suitcase would be seized. DEA agents asked NOEL if he would accompany the agents to the DEA office at the Amtrak Union Station, so that agents could provide NOEL with a receipt for the money and process paperwork. NOEL agreed. NOEL was permitted to carry his luggage, including the suitcase containing the currency to the DEA office. On the way to the Office, NOEL stated that the amount of currency in the suitcase was approximately $150,000 or $175,000.

12. Once at the DEA Office, NOEL was told that he was not under arrest. Agents then

additionally advised NOEL of his rights. At that point, NOEL signed a written consent to search his luggage. NOEL disclaimed any interest or ownership in the currency that was found in the suitcase, signing a "Voluntary Disclaimer of Interest and Ownership." NOEL stated that he was transporting the currency from Philadelphia, Pennsylvania to Reno, Nevada for Individual A, in exchange for a payment of $4000, and that the currency belonged to Individual A. NOEL further stated that he had rented a car from National Car Rental in Philadelphia and driven to Chicago, and that he had planned to take a train from Chicago to Reno, which was a scheduled stop for the train, on which he was ticketed. National Car Rental later confirmed that an individual with the name "Paul Noel" rented a car on or about February 10, 2008 in Philadelphia. When asked what the money was from, NOEL responded that it was probably gambling because he was supposed to drop off the money to individuals in Reno. NOEL's other bag and coolers were searched and no additional currency or contraband was found.

13. A Chicago Police canine unit arrived to conduct a sniff of the currency from the suitcase. The canine, "Five-O", trained to alert, reacted to the odor of narcotics in the suitcase containing the seized currency.

14. Based on the foregoing, I believe there is probable cause to believe that PAUL NOEL did travel in interstate commerce, namely from Philadelphia, Pennsylvania to Chicago, Illinois, with intent to distribute the proceeds of, and otherwise promote, manage, establish, carry on, and facilitate promotion, management, establishment and carrying on of, an unlawful activity, namely narcotics or controlled substance distribution, in violation of Title 18, United States Code, Sections 1952(a)(1), (3).

FURTHER AFFIANT SAYETH NOT

_____
DENNIS IVANICH, Task Force Officer
Drug Enforcement Administration


Sworn and subscribed before me on this 15th day of February, 2008.

_____
MARIA VALDEZ
UNITED STATES MAGISTRATE JUDGE